IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                                    :
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, *et al.*,       :

       v.                           :    Civil Action No. DKC 14-2376

                                    :
ADVANCED SURGERY CENTER
OF BETHESDA, LLC, *et al.*,        :

                         **MEMORANDUM OPINION**

    Presently pending and ready for resolution are two motions to compel, one filed by Plaintiffs/Counter-Defendants Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") (ECF No. 138),[1] and the other filed by Defendants/Counter-Plaintiffs (ECF No 139). Defendants are twenty ambulatory surgical care facilities doing business in Maryland (collectively, "the ASCs"),[2] and

---

[1] Plaintiffs' Corporate Disclosure Statements reveal that they are both subsidiaries of "Connecticut General Corporation, which is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a wholly-owned subsidiary of Cigna Corporation." (ECF Nos. 18; 19). Although Plaintiffs repeatedly refer to themselves as "Cigna" as if they are a singular entity, it is unclear what relationship these subsidiaries share, and whether they can be treated as one and the same for the purpose of this action.

[2] Defendant ASCs are Advanced Surgery Center of Bethesda, LLC; Bethesda Chevy Chase Surgery Center, LLC; Deer Pointe Surgical Center, LLC; Hagerstown Surgery Center, LLC; Leonardtown Surgery Center, LLC; Maple Lawn Surgery Center, LLC; Maryland Specialty Surgery Center, LLC; Monocacy Surgery Center, LLC; Piccard Surgery Center, LLC; Riva Road Surgical Center, LLC; SurgCenter at National Harbor, LLC d/b/a Harborside Surgery

Surgical Center Development, Inc. d/b/a SurgCenter Development ("SurgCenter"), a Nevada corporation that purportedly helped establish the ASCs and consults in their businesses (collectively, the ASCs and SurgCenter are "Defendants"). (ECF No. 1 ¶ 33). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be granted and Cigna's motion will be granted in part and denied in part.

## I. Background

A complete recitation of the factual background can be found in the court's prior memorandum opinion in response to the parties' cross motions to dismiss. (ECF No. 63, at 1-10). The underlying basis of the dispute stems from the ASCs' policy of matching the in-network price for Cigna's patients, even though they were an out-of-network provider and charged Cigna the out-of-network rates.[3] The parties have been participating in discovery. After reaching an impasse on several issues, the parties each served motions to compel on one another and attempted to resolve their disputes through conference.

---

Center; SurgCenter of Glen Burnie, LLC; SurgCenter of Greenbelt, LLC; SurgCenter of Silver Spring, LLC; SurgCenter of Southern Maryland, LLC; SurgCenter of Western Maryland, LLC; SurgCenter of White Marsh, LLC; Timonium Surgery Center, LLC; Upper Bay Surgery Center, LLC; and Windsor Mill Surgery Center, LLC.

[3] The parties refer to the billing scheme as "price matching," "fee forgiveness," and "dual-pricing." These terms are used interchangeably in this opinion.

Pursuant to Local Rule 104.8, each side filed certificates of conference and submitted briefing on the motions for the remaining issues.  (ECF Nos. 138; 139).

**II.  Standard of Review**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed.R.Civ.P. 26(b)(1).  Pursuant to Fed.R.Civ.P. 33, a party may serve interrogatories on the other party into any matter that may be inquired into under Rule 26(b).  Under Fed.R.Civ.P. 34, a party may serve a request for production of designated documents or electronically stored information, described with reasonable particularity, that are within the scope of discovery and in the responding party's possession, custody, or control.  If a party fails to respond to interrogatories or to produce documents requested under these Rules, the party seeking discovery may move for an order compelling production.  Fed.R.Civ.P. 37(a)(3)(B)(iii-iv).  Under Local Rule 104.8(a), the memorandum in support of a motion to compel "shall set forth, as to each response to which the motion is directed, the discovery request, the response thereto, and the asserted basis for the insufficiency of the response."

"Perhaps the single most important word in Rule 26(b)(1) is 'relevant,' for it is only relevant matter that may be the

subject of discovery." 8 Charles Alan Wright, Arthur Miller, *et al.*, Federal Practice and Procedure § 2008 (3d ed. 2016). Even if information is relevant, however, the court must consider the proportionality factors in Fed.R.Civ.P. 26(b)(1): "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Because "[f]airness in the disposition of civil litigation is achieved when the parties to the litigation have knowledge of the relevant facts, . . . the discovery rules are given 'a broad and liberal treatment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

**III. Analysis**

    **A. Transcripts from Other Litigation Involving Cigna and Out-of-Network Providers**

Defendants move to compel Cigna to provide transcripts of depositions by its employees, officers, and agents from other litigation between Cigna and other out-of-network providers. In their reply to the motion, Defendants clarify that they seek only testimony from cases involving allegations of fee

4

forgiveness. (ECF No. 139-3, at 6).[4] They argue that the transcripts are relevant as "other incidents of the same type" under Rule 26(b)(1). *See* Fed.R.Civ.P. 26 advisory committee's note to 2000 Amendment. They suggest that the transcripts will show whether Cigna had prior knowledge of the billing procedures and therefore cannot claim to have reasonably relied on Defendants' false statements. (ECF No. 139-1, at 10). Defendants further explain that the transcripts will assist them in preparing for depositions about Cigna's "Special Investigations Unit" and in exploring "potential areas for impeachment" for Cigna's witnesses in this case. (*Id.* at 12).

Cigna does not aver that the transcripts are not relevant, but instead suggests that the scope of Defendants' request is too broad, even in light of the limitation to fee forgiveness cases. If Defendants sought to determine whether it had prior knowledge of their billing schemes, Cigna argues that their request should be limited to transcripts relating to Cigna's knowledge of other "SurgeCenter-affiliated" centers' billing schemes. These transcripts were apparently previously produced to Defendants in another case. (ECF No. 139-2).[5] But Defendants

---

[4] Defendants also previously limited their request to cases from the five years prior to filing this case. (ECF No. 139-10, at 3).

[5] Defendants do not dispute that Cigna produced such transcripts in the prior litigation, *Arapahoe Surgery Center,*

seek evidence beyond Cigna's knowledge of their specific billing schemes. They also want transcripts from other cases involving fee forgiveness, which they maintain were being "employed by out-of-network healthcare providers across the United States." (ECF No. 139-1, at 3). Because even non-SurgCenter affiliates might have used billing practices that would have made Cigna aware of fee-forgiveness policies like their own, information from other similar cases is relevant.

Cigna also contends that the burden of producing these transcripts is considerable. It does not dispute Defendants' contention that "electronic copies of such documents can be gathered with relative ease and efficiency by the attorneys who represented Cigna in such matters." (ECF Nos. 139-1, at 12; 139-2, at 6). Instead, it suggests that producing these transcripts would be burdensome because of the confidentiality orders in place in those other cases. It would be a significant burden, Cigna argues, to confer with counsel from dozens of other cases in order to ensure that it is not violating confidentiality orders in those cases. (ECF No. 139-2, at 6-7).

Defendants counter this argument by pointing to *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 498 (D.Md. 2000), in which another judge in this district addressed a similar

---

*LLC, et al., v Cigna Healthcare, Inc.*, 80 F.Supp.3d 1257 (D.Colo. 2015).

assertion that documents related to another case cannot be produced because doing so would violate a confidentiality order. That court found it important to consider the text of the confidentiality order, the nature of its issuance, the age and disposition of that case, and which party it sought to protect. *Id.* at 498-501. Here, Cigna may not yet have even fully identified the cases. (ECF No. 139-10, at 3).[6] Given that it has not provided the court with specific information about any protective orders, it has not sufficiently "allege[d] specific facts that indicate the nature and extent of the burden." *Tucker*, 191 F.R.D. at 498.

Accordingly, Defendants' motion to compel will be granted with respect to transcripts unless Cigna can provide such information about the specific confidentiality orders in place in those cases and that information shows that the transcripts warrant nondisclosure under *Tucker*. As noted above, Cigna must produce such documents even if they come from litigation with non-SurgCenter affiliates, so long as the cases involve similar claims of fee forgiveness. *See Capital Ventures Int'l v. J.P.*

---

[6] In prior correspondence, Defendants complain that Cigna has provided a list of thirty-seven case names and numbers, but failed to provide the court where the case took place for thirty-four of them, apparently preventing Defendants from being able to identify all the cases. (ECF No. 139-10, at 3). Because Cigna will be compelled to provide the transcripts requested unless it can show that the confidentiality orders warrant nondisclosure, the dispute over the court locations presumably will be mooted.

*Morgan Mortg. Acquisition Corp.*, No. 12-10085-RWZ, 2014 WL 1431124, at *1 (D.Mass. Apr. 14, 2014) (emphasizing that discovery of materials from other litigation should be limited to materials from cases with "sufficient similarity," in light of the specific claims and the bases of those claims).

    **B.   Documents and Communications as to ASCs' Decision Whether to Join Provider Networks**

Cigna first seeks to compel the ASCs to produce documents and communications related to their decision not to join provider networks. Cigna contends this information is relevant because it will show that the ASCs specifically chose to stay out-of-network so that they could execute their fee-forgiveness scheme. It also avers that SurgCenter's encouragement, consulting, and support of such a decision are relevant to its aiding and abetting claim. The ASCs counter that all such evidence could possibly show is that Cigna and the ASCs were unable to find mutually agreeable terms. (*Id.* at 8). Cigna points out that the ASCs' position may be that the two sides were unable to come to an agreement, but its position is that the ASCs never wanted to join provider networks because they would no longer be able to benefit from their fraudulent scheme if they became in-network providers. (ECF No. 138-4, at 6-7). It argues that the difference in these two positions is the exact reason that this discovery is needed. Whether the ASCs

8

chose not to join networks because they could make more money by misrepresenting their dual pricing scheme is relevant to the question of the ASCs' intent. Although this information may include some proprietary business considerations that Defendants would like to keep confidential, the confidentiality order in this case should sufficiently protect that interest. Therefore, Cigna's motion to compel will be granted as to these requests.

    C.    **Documents and Communications Related to the ASCs' Investors and Financial Relationships**

Cigna also moves to compel Defendants to provide information about their investors and financial arrangements. Specifically, it seeks (1) information given to investors about profitability and their business model; (2) the names and contact information of all investors; (3) financial information related to the ASCs' physician investors and their returns on investment; and (4) the financial relationship between SurgCenter and the ASCs.

Cigna begins by suggesting that discovery related to the ASCs' investors is likely to include representations about profitability resulting from the pricing scheme. (ECF No. 138-2, at 17). The ASCs may be correct that the representations made to investors have no bearing on whether they misrepresented material aspects of their billing practices to Cigna (ECF No. 138-3, at 6), but, because Cigna will be forced to show that the

ASCs knew their representations to Cigna were false and made the misrepresentations for the purpose of defrauding Cigna, such information given to investors while discussing the pricing scheme would certainly be relevant to proving its fraud claim. As written, however, the request for production is too broad. The request includes, for example, "any communications relating to investments with any investor." (ECF No. 138-2, at 13). Such a request will unnecessarily capture far more than is helpful to the resolution of the issues in this case. Therefore, Cigna's motion will be denied with regard to investor communications. Cigna's interrogatories with regard to Defendants investors are much more concrete. Because Defendants' investors are likely to possess discoverable information that would be relevant to the fraud claim for the same reasons stated above, Cigna's motion to compel with regard to SCD Interrogatory No. 5 and ASC Interrogatory No. 4, seeking investor identities, will be granted.

ASC Interrogatory No. 5, however, asks the ASCs to identify former investors who were disassociated by a vote of the shareholders. Cigna provides no explanation why it would be relevant to know which former investors were disassociated by a shareholder vote. Indeed, its only reference in the motion to former investors emphasizes the value of those investors who disassociated of their own accord because of the billing scheme,

not investors who were disassociated by the other investors. Therefore, the motion to compel the ASCs to respond to ASC Interrogatory No. 5 will be denied.

Next, Cigna moves to compel disclosure of financial information related to the ASCs' physician investors and their returns on investment. According to Cigna, physician investors were "an important – if not essential – part" of the billing scheme because the physician investors participated in Cigna's network and referred patients to the out-of-network ASCs. (ECF No. 138-2, at 19). Cigna first argues that distributions to physician investors show the ASCs' motives in pursuing the billing scheme. This argument misses the mark, however, because payments to those physicians by the ASCs would show the physicians' motive for participating in the scheme, not the ASCs' motive.

The cooperation of physician investors may well have been relevant to how Cigna patients wound up in at the ASCs, but Defendants' entire business model is not necessarily relevant to the claims here. Notably, the physician investors are not accused of participating or aiding in the fraud. Had the ASCs used physician investors to get referrals and then charged Cigna's patients normal out-of-network rates, there would be no cause for the claims in this case. Alternatively, if the in-network doctors had referred their patients to the ASCs simply

11

because they were offering the best services to the physicians' patients, but the ASCs still engaged in fee forgiveness, the claims here would remain intact. Thus, whether and how those physicians were paid does not bear on whether the ASCs' billing scheme was fraudulent. Because the court considers the "importance of the discovery [request] *in resolving the issues*," and in "proportion[] to *the needs of the case*," Fed.R.Civ.P. 26(b)(1) (emphasis added), the discovery here has such minimal value to the disputed issue that it cannot meet the Rule's requirements.[7]

Cigna also avers that the information about the relationship between the ASCs and their physician investors is relevant to its damages and its unjust enrichment claim. (*Id.*

---

[7] To the degree that the role of the physician investors is relevant, it is also noteworthy that the ASCs do not dispute that they reduced rates for patients. Rather, Defendants' own motion to compel admits that the ASCs aimed "to make medical care affordable to their patients by attempting to match their patients' in-network cost-sharing responsibilities (*i.e.*, co-payments, deductibles, and co-insurance)." (ECF No. 139-1, at 3). The crux of Defendants' arguments is that this pricing scheme was lawful, emphasizing that these "price reductions [were] identified in their bills," and that "[v]ariations of this price-matching policy are employed by out-of-network healthcare providers across the United States." (*Id.*). Therefore, the proper focus is on facts relevant to the resolution of the dispute over whether the price-matching conduct was fraudulent. *See Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 204 (S.D.W.Va. 2011) (denying a motion to compel the identification of witnesses likely to have relevant information because the "Defendants [we]re basically willing to admit" that they had committed the alleged act, and therefore the plaintiff did not need the information to prove its claim).

at 19-20). Defendants rightly point out that because Cigna knows exactly what it paid to each of the ASCs, the measure of damages will be the amount that it paid in excess of what it should have paid. This same amount will constitute the benefit conferred on Defendants under Cigna's unjust enrichment claim. The profits made by Defendants or their investors are therefore not relevant, and the motion will be denied with regard to these requests.

Finally, Cigna seeks discovery of the financial relationship between the ASCs and SurgCenter. None of the reasons put forth in Cigna's motion demonstrate that this information is relevant to its case against SurgCenter for aiding and abetting. First, it argues that the amount of money SurgCenter received is "probative of the magnitude of the 'substantial assistance'" it provided to the ASCs. (ECF No. 138-2, at 19). Of course, there is no certainty that the amounts the ASCs paid are an accurate reflection of the services that SurgCenter rendered, but even if those payments could be used to determine the value of the services SurgCenter provided, these figures would not show what amounts, if any, of those payments were for SurgCenter's role in the billing scheme at issue and what amounts were for other services rendered. Second, Cigna suggests that "to the extent any payments to SurgCenter depended on the volume of patients that the ASCs

obtained . . . , such arrangements would clearly amount to 'encouragement.'" (*Id.*). Cigna again seems to have reversed the roles of the various players. The pertinent question in its aiding and abetting claim is whether SurgCenter encouraged the ASCs to commit fraudulent billing practices. Payments to SurgCenter would presumably provide encouragement for SurgCenter to act in a certain way, not vice versa. Third, Cigna claims the amount that SurgCenter made from the billing scheme is important to the measure of damages in this case. (*Id.*). But as discussed above, the damages will be determined not by looking at Defendants' profits, but by comparing what Cigna paid with what it should have paid.[8] Therefore, Cigna's motion will be denied with regard to these requests.

## IV. Conclusion

For the foregoing reasons, the motions will be granted in part and denied in part. A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge

---

[8] In its reply, Cigna adds the argument that the financial relationship between the ASCs and SurgCenter would be demonstrative of SurgCenter's motive to aid and abet the ASCs in the fraudulent billing scheme. (ECF No. 138-4, at 8). To the degree that motive could be used to show intent, Cigna's failure to argue this reason until its reply precludes consideration of the argument here.